COOPER *v.* HUNTINGTON COUNTY COMMUNITY SCHOOL CORPORATION BOARD OF TRUSTEES.

[No. 31,154. Filed January 17, 1968. Rehearing denied February 28, 1968.]

*Edris, Edris and Dale, John H. Edris, Jr.,* of Bluffton, *Gemmill, Browne, Torrance, Sisson & Morin* and *Thomas L. Morin,* of Marion, for appellants.

*Kenner, Gordon, Glenn and Miller, William S. Gordon,* of Huntington, *Kiley, Osborn, Kiley* and *Harker, David L. Kiley,* all of Marion, *Palmer, Bowers & Brewer* and *Arthur J. Palmer,* both of Huntington, for appellees.

MOTE, J.—This is an appeal from a final judgment entered in the trial court on April 4, 1967 denying injunctive relief to Appellants.

The issues in the trial court joined by Appellants' Amended Complaint and Appellees' Answer under Rule #1-3, and now urged by Appellants for our consideration, are: "Whether Appellees in adopting a plan providing for the construction of a single senior high school building and facility for all of the students of Huntington County in grades ten through twelve acted 'arbitrarily, unjustly, unreasonably, deviously, unnecessarily, capriciously' and whether such action was 'repugnant to sound principles of education,' and whether such action constituted a 'breach of trust and abuse of discretionary powers.' "

The record discloses the adoption, on November 13, 1963, of A Final Comprehensive Reorganization Plan for the Reorganization of School Corporations in Huntington County, Indiana, in accordance with and as provided by the terms of The School Corporation Reorganization Act of 1959, as

amended. Acts 1959, ch. 202, § 2, p. 451, § 28-6101 et seq., particularly amendments of 1963, Burns' Ind. Stat. Anno., 1967 Cum. Supp.

No attack is here made upon the validity of the "Plan," as adopted. Rather, as above stated, the attack is made upon the execution of the "Plan" by the duly selected Board of School Trustees in the establishment and "the construction of a single senior high school building and facility for all of the students of Huntington County in grades ten through twelve."

First, the "Plan" contemplated, as indeed it must, under the 1959 Act, as amended, that such determination was vested in the discretion of the Board of School Trustees. The County Committee, upon which one of the Appellants (B. Trent Cooper, M.D.) served, recognized that it could not lawfully bind, and it did not try to bind by the provisions of the final adopted "Plan," the said Board in any lawful manner to do other than fulfill their obligations as Trustees:

> "The task of the county committee was one of creating new administrative units for the public schools of Huntington County. The committee does not attempt in its plan to determine (1) how many schools will be in operation, (2) where children will go to school, (3) nor the construction of new school buildings, etc. These questions will be determined by and are the responsibility of the board of school trustees who are to be appointed as outlined in the plan." (From Plaintiffs' Exhibit No. 1, the Comprensive Report, not Plan, of the County Reorganization Committee, as stated in Appellants' Brief.)

Plaintiffs' Exhibit No. 1 also contained the following:

> "It is not the intent of this plan to indicate what the final disposition in terms of building utilization should be. It would take a more detailed study of the pupil population, organizational pattern to be followed and program desired before such recommendations could be safely suggested. It is recommended that the board of school trustees of the newly created unit conduct a comprehensive study of program and physical needs. Such a study should provide an accurate evaluation of pre-school and school age children and their place of residence, enrollment projections, build-

ing needs, site selection, program needs, financial program and then make recommendations for future action."

We understand Plaintiffs' Exhibit No. 1 to contain fifteen recommendations and was devised after a county-wide newspaper survey in preparing the proposed plan for reorganizing the School Corporation of Huntington County. They were not recommendations of the Committee to the Board of School Trustees, nor could they lawfully be of a limiting nature on the latters' powers and duties in the exercise of discretion.

Appellant, Dr. Trent Cooper, on cross-examination, acknowledge that the County Committee upon which he served had no authority to determine the number or location of schools—"it was not definitely legally binding." He also acknowledged Plaintiffs' Exhibit No. 1, *supra,* containing the fifteen points, were recommendations that the County Committee used and were not recommendations of the said Committee to the Board of School Trustees.

There is much more in the record pertaining to this phase of the litigation, but we shall not extend our opinion by further inclusion of the same.

The importance of the record, as above set forth and referred to, is that at the conclusion of Appellants' evidence below, Appellees presented their Motion for Finding, which, omitting formal parts and signatures, is as follows:

"Comes now the defendants, by their attorneys, Kenner, Gordon, Glenn & Miller, Palmer, Bowers & Brewer, and Kiley, Osborn, Kiley & Harker, and at the close of the plaintiffs' evidence in this case, but specifically reserving the right to tender further evidence herein, now respectfully move the court to enter a finding and judgment for them and against the plaintiffs in this action."

After arguments of counsel, the trial court sustained said Motion and entered judgment as follows:

"Comes now plaintiffs in person and by counsel. Comes also defendants in person and by counsel. Evidence heard. Plaintiffs rest. Defendant files motion for finding. Motion

submitted. Arguments heard and concluded. Finding for defendants and against plaintiffs. Finding further that one or more of material allegations in plaintiff's complaint essential to recovery are not supported by evidence of probative value. Finding further that stipulations entered into by parties herein on February 7, 1967, are now set aside and vacated. Costs against plaintiffs. Judgment on findings."

Appellants advanced but one of the two alleged errors at the oral argument and specifically waived the other error. They now assert that the court erred in sustaining Appellees' Motion for Finding at the close of Appellants' evidence. In support thereof, they contend that there was sufficient evidence of a substantial nature and of probative value in their establishment of a prima facie case that it was prejudicial and reversible error to sustain Appellees' Motion for Finding at the conclusion of Appellants' evidence and enter judgment denying Appellants the injunctive relief which they sought by their action.

We think the record, as well as the evidence above referred to, already points to our conclusion in the matter.

The acceptable standard for consideration of a motion for finding appears to be similar to that of a motion for directed verdict:

". . . such a motion (for finding and judgment) is in purpose similar to a motion for a directed verdict in a case of trial by jury." *Berry* v. *State Bank of Otterbein* (1935), 99 Ind. App. 655, 193 N. E. 922. See also: *Pesch* v. *Gretter et al* (1940), 216 Ind. 396, 24 N. E. 2d 923.

Appellants appear to be rather quixotic in their argument. Of course, the legal principles they rely upon and the authorities they cite in support thereof are sound; however, the application of such principles to the facts at bar fail to impress us. That Appellants are sincere and earnest is not to be doubted and this Court cannot and does not consider or determine whether there should be more than one senior high school or the location thereof—that function reposes solely

and exclusively in the Board of School Trustees, as the trial court determined.

It appears to us that Appellants' position is a fallacy. Clothed with the authority by statute and so recognized by the County Committee, including Appellant Dr. Cooper, and following the direct recommendation of said Committee, the Board of School Trustees, individually and as a body, sought the services of Purdue University and others for enlightenment. One or more trustees originally opposed to the establishment of only one senior high school apparently became convinced that the Board should follow the recommendation, after survey, of Purdue University. As a consequence, the entire membership of the said Board reached agreement to establish but one senior high school, grades ten (10) through twelve (12).

Hence, it cannot be said that there is evidence in the record of a substantial character and probative value in anywise to sustain Appellants' burden of proof that "Appellees acted arbitrarily, unjustly, unreasonably, deviously, unnecessarily, capriciously" and whether such action was "repugnant to sound principles of education" and whether such action constituted a "breach of trust and abuse of discretionary powers."

The "Indiana General School Powers Act," 1965, ch. 307, p. 894, and particularly § 10, enumerates the specific powers of Appellee Board, § 28-6410, Burns' Ind. Stat. Anno., 1967 Cum. Supp. In the interest of brevity, we shall not quote therefrom. Needless to say, however, that the Appellee Board, under this and other statutory authority, fully was authorized to do that which is attacked by the instant litigation. Furthermore, it is apparent that by the institution of the action below, Appellants were attempting unlawfully to dominate and to demand substitution of Appellants' discretion for that of the Board. As stated above, such discretion vests only in the Board.

Surely many citizens of the community involved doubtless

will feel a sense of frustration at the result of this determination. And we are able to sympathize with them; however, our duty is clear. We must conclude that the record herein does not even suggest that Appellants presented a prima facie case by the evidence they introduced before the trial court, considered in the light of the exclusive power vested in the Board of School Trustees.

The judgment in the trial court is affirmed.

Lewis, C. J., Arterburn, Hunter and Jackson, JJ., concur.

NOTE.—Reported in 233 N. E. 2d 887.